UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRED RATLIFF, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 3:12-cv-01238 |
| v. ) | Judge Campbell/Brown |
| ) | |
| JEWELL STEELE, ) | |
| WARDEN, ) | |
| ) | |
| Respondent. ) | |

To: The Honorable Todd Campbell, United States District Judge

### REPORT AND RECOMMENDATION

For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Respondent's Motion to Dismiss (DE 12) be **GRANTED**, that the Petitioner's petition for writ of habeas corpus (DE 1) be **DENIED** and **DISMISSED**, and that the Petitioner's motion to allow discovery (DE 17) be **DENIED**. Should the Petitioner file a timely notice of appeal, such notice shall be docketed as both a notice of appeal and an application for a certificate of appealability ("COA") which the Magistrate Judge **RECOMMENDS NOT ISSUE**.

### I. INTRODUCTION

The Petitioner is serving a life sentence at the Lois M. Deberry Special Needs Facility in Nashville, Tennessee. (DE 1, pp. 1-2). Through counsel, he filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging the government withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). (DE 1, p. 6). Pending before the Magistrate Judge are the Respondent's motion to dismiss (DE 12) and the Petitioner's motion to allow discovery. (DE 17).

## II. BACKGROUND

On August 21, 1976, a jury in Scott County found the Petitioner guilty of first degree murder and sentenced him to life imprisonment. (DE 12-1, p. 36). The Petitioner moved for a new trial on September 2, 1976, (DE 12-1, pp. 38-39), which the Scott County Criminal Court overruled on October 14, 1976. (DE 12-1, p. 40). On March 17, 1977, the Petitioner appealed the Criminal Court's decision to the Tennessee Court of Criminal Appeals. (DE 12-14). The Court of Criminal Appeals affirmed the lower court's decision on August 3, 1977, (DE 12-16), and the Tennessee Supreme Court denied the Petitioner's petition for writ of certiorari on October 17, 1977. (DE 12-17).

Ten years later, the Petitioner filed a petition for post-conviction relief in the Criminal Court of Scott County on November 4, 1987. (DE 12-25). Among other complaints, the Petitioner alleged that the prosecution's main witness against the Petitioner, Darrel Bowling ("Mr. Bowling"), was an unreliable witness and only testified in exchange for the State dropping burglary and drunk driving charges. (DE 12-25, pp. 35-36, 40). Though the court denied relief after conducting a hearing, the Petitioner did not appeal this decision. *See Ratliff v. State*, E2011-01187-CCA-R3-PC, 2012 WL 1868312, at *4 (Tenn. Crim. App. May 23, 2012), appeal denied (Oct. 16, 2012). Nine years passed, and on November 21, 1996, the Petitioner filed a second petition for post-conviction relief in the Scott County Criminal Court. (DE 12-24, pp. 3-12). The court dismissed this petition on January 2, 1997 as barred by res judicata and the statute of limitations. (DE 12-24, p. 21).

The Petitioner next filed a petition under the Post-Conviction DNA Analysis Act of 2001 on April 25, 2005, but this petition was dismissed on May 19, 2008, because the required evidence could not be located. (DE 12-24, pp. 31-38, 69).

In 2010, Mr. Bowling granted the Petitioner's attorney permission to inspect Mr. Bowling's criminal record. (DE 1, p. 5). The Petitioner's attorney located the record on April 7, 2010. (DE 1, p. 5).[1] More than ten months later, the Petitioner filed a petition for writ of error coram nobis in the Scott County Criminal Court on February 22, 2011, claiming he had new evidence of his innocence. (DE 12-18, pp. 4, 13-15). The Criminal Court conducted an evidentiary hearing on May 20, 2011 and dismissed the petition on two grounds. (DE 12-19, p. 86). First, the court concluded that the action was time-barred and not worthy of equitable tolling; second, the Petitioner failed to show that the trial outcome might have been different if the criminal record had been produced at trial. (DE 12-19, pp. 85-86). The Petitioner appealed the Criminal Court's dismissal on August 29, 2011. (DE 12-29, pp. 2-51). On May 23, 2012, the Tennessee Court of Criminal Appeals affirmed the Criminal Court's dismissal. (DE 12-32, pp. 2, 12). The Petitioner then filed a Rule 11 application in the Tennessee Supreme Court on July 23, 2012, seeking review of the Court of Criminal Appeals' decision. (DE 12-33, pp. 2-63). The Tennessee Supreme Court denied the Rule 11 application on October 16, 2012. (DE 12-34, p. 3).

The Petitioner filed a petition for writ of habeas corpus in this Court on November 28, 2012. (DE 1). On November 29, 2012, District Judge Campbell ordered the Respondent to answer. (DE 2). The District Judge then referred this case to the Magistrate Judge "for resolution of all pretrial, nondispositive motions, and to recommend disposition of dispositive motions" on January 7, 2013. (DE 7).

On March 8, 2013, the Respondent moved to dismiss on the basis that the Petitioner's petition was untimely filed. (DE 12). The Petitioner responded to this motion on March 23, 2013.

---

[1] This document first states that Petitioner's attorney obtained the record on April 7, 2012. (DE 1, p. 5). However, later in the document, the date is marked as April 7, 2010 (DE 1, p. 8) which is consistent with the Petitioner's coram nobis filings. The undersigned therefore considers April 7, 2010 the date of discovery.

(DE 16). On March 26, 2013, the Petitioner filed a motion to allow discovery (DE 17), and the Respondent responded on April 11, 2013. (DE 18).

### III. LEGAL DISCUSSION

**A. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") governs habeas petitions regarding State court determinations. 28 U.S.C. § 2254(d); *Brooks v. Tennessee*, 626 F.3d 878, 888 (6th Cir. 2010). This Court may grant a petition for writ of habeas corpus to a prisoner in custody pursuant to a State court judgment if the petitioner can show that the State proceeding:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A court's "unreasonable application" of Federal law is different from an "incorrect application." *Metrish v. Lancaster*, _U.S._, 133 S. Ct. 1781, 1792 (2013) (quoting *Williams v. Taylor*, 520 U.S. 362, 365 (2000)). Rather, the petitioner must show that the State court's decision "is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson*, _U.S._, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter,* 562 U.S._, 131 S. Ct. 770, 786 (2011)).

Factual determinations made by the State court are presumptively correct, and the petitioner bears the burden of rebutting these presumptions by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

### A. *Brady* Violation

An accused's due process rights are violated when the prosecution suppresses favorable material evidence. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, _U.S._, 132 S. Ct. 627, 630 (2012) (quoting *Cone v. Bell,* 556 U.S. 449, 469–470 (2009)). To raise a *Brady* violation, the petitioner must show that:

(1) The [material] evidence is favorable to the accused, either by being exculpatory or impeaching;

(2) The State suppressed the evidence either willfully or inadvertently; and

(3) Prejudice ensued.

*United States v. Ross*, 703 F.3d 856, 880 (6th Cir. 2012), reh'g denied (Apr. 16, 2013).

The Scott County Criminal Court and the Tennessee Court of Criminal Appeals both determined that the Petitioner failed to raise a valid *Brady* claim. *Ratliff*, 2012 WL 1868312, at *1, 13. Not only was the *Brady* claim barred by the statute of limitations, but it was also materially insufficient in that the new evidence likely would not have changed the trial outcome. *Id*. These courts found that the information presented at the trial—which included Mr. Bowling's arrest record, Mr. Bowling's cooperation with the police, and Mr. Bowling's possible motivations for testifying against the Petitioner—sufficiently challenged Mr. Bowling's testimony. *Id*. at *13. The new evidence about Mr. Bowling's criminal history was "simply not enough" to convince the courts that the trial outcome *might* have changed. *Id*.

The Magistrate Judge is of the same opinion. As noted by the State courts, Mr. Bowling's credibility did not go untarnished at trial, and the unreleased criminal record only goes to

5

characterizing Mr. Bowling as a juvenile delinquent. None of the information contained therein directly pertains to the Petitioner's murder conviction. The government was not forthcoming with Mr. Bowling's criminal background at trial, but the Petitioner has not sufficiently established a "reasonable probability" that its introduction may have resulted in a different outcome. Thus, the withheld information is not material. The State courts' decisions do not unreasonably apply the law to this issue, and Federal Courts hearing the matter must defer to their determinations. *See* 28 U.S.C. § 2254(d)(1).

**B. Statute of Limitations**

**1. The AEDPA and 28 U.S.C. § 2244(d)(1)**

State prisoners must file habeas petitions within the one-year statute of limitations set forth by the AEDPA. 28 U.S.C. § 2244(d)(1) ("§ 2244"). The statute runs from the latest of:

> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> . . .
>
> (D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*. Additionally, Prisoners whose convictions were finalized prior to the AEDPA's enactment in 1996 were given until April 24, 1997 to file habeas petitions. *Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004).

This one-year statute tolls while the claimant pursues "properly filed" post-conviction or other collateral review of the pending judgment or claim. 28 U.S.C. § 2244(d)(2). An application is properly filed "when [its] delivery and acceptance are in compliance with the applicable laws and rules governing filings," including timing requirements. *Williams v. Birkett*, 670 F.3d 729,

6

733 (6th Cir. 2012) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). The statute of limitations continues to run when an untimely petition is pending. *Pace v. DiGuglielmo*, 544 U.S. 408, 416-417 (2005); *see also Pickett v. Welsh*, 1:09CV1339, 2010 WL 3749596, at *5 (N.D. Ohio June 30, 2010).

## 2. § 2244(d)(1)(A): When the Judgment Became Final

The Respondent correctly notes that the Petitioner's conviction "became final" under § 2244(d)(1)(A) on January 16, 1978. (DE 13, p. 11).[2] Because the Petitioner was convicted before the AEDPA's enactment in 1996, he had until 1997 to file his petition.

## 3. § 2244(d)(1)(B): When Any State-Created Impediments Were Removed

The Petitioner argues that the statute of limitations is governed by § 2244(d)(1)(B) and only began to accrue when the following alleged government-created impediments were removed: (1) the facts underlying his *Brady* claim, (2) his ignorance of Mr. Bowling's criminal record, (3) his continued incarceration, and (4) the continued confidentiality of Mr. Bowling's record. (DE 16, p. 2). However, none of these alleged impediments governs the applicable statute of limitations.

First, the Petitioner does not raise a valid *Brady* claim. Although no published cases in this Circuit are on point, at least one unpublished District Court decision held that § 2244(d)(1)(B) does not encompass *Brady* claims when the petitioner (1) fails to show that the State prevented him from "investigating and discovering the alleged impeachment information" and (2) when the petitioner did not diligently search for the evidence. *Minor v. Warden*, 1:08-CV-00583, 2009 WL 4828602, at *9 (S.D. Ohio Dec. 11, 2009).

---

[2] The Petitioner's conviction was finalized when the Tennessee Supreme Court denied his petition for writ of certiorari on October 17, 1977, and the Petitioner's ninety (90) days to seek review by the United States Supreme Court lapsed. (DE 12-17). *See Gonzalez v. Thaler*, _U.S._, 132 S. Ct. 641, 653 (2012).

The Petitioner does not satisfy these prongs. Aside from citing the government's misrepresentations about Mr. Bowling's criminal background, the Petitioner has not alleged that the government prevented him from seeking Mr. Bowling's records on his own. Further, as discussed *infra* at pp. 10-12, the Petitioner did not diligently search for this evidence.

Second, the Petitioner's claims of ignorance are one and the same as his *Brady* claim which is discussed further below in the application of § 2244(d)(1)(D). Third, the Petitioner acknowledges that incarceration is not a sufficient impediment because nearly all habeas petitions are filed by inmates, and tolling the statute based on this condition would negate the purpose of having a statute of limitations. (DE 16, p. 2). Fourth, the Petitioner concedes that sealing Mr. Bowling's records in accordance with Tenn. Code Ann. § 37-1-153 does not violate the Constitution or the laws of the United States, a prerequisite for tolling the statute of limitations under § 2244(d)(1)(B). (DE 16, p. 2).

4. **§ 2244(d)(1)(D): When the Factual Predicate of the Claim Could Have Been Discovered Using Due Diligence**

A petitioner is not "prevented" from filing a petition if the petitioner can obtain the information after exercising a "garden-variety diligence." *Minor*, 2009 WL 4828602, at *9. When the state denies that exculpatory evidence exists, "due diligence d[oes] not require [the petitioner] to ask the state if it had withheld *Brady* material *unknown* to him." *Willis v. Jones*, 329 F. App'x 7, 9 (6th Cir. 2009) (emphasis added). However, the "state could conceivably violate *Brady* in a way that would be easily discoverable by a diligent petitioner." *Id*. at 17; *see also Minor*, 2009 WL 4828602, at *8-10.

The Petitioner concedes that beginning the statute of limitation pursuant to § 2244(d)(1)(D) is problematic because the Petitioner's prior attorney "was *not* particularly diligent" in obtaining the new evidence. (DE 16, p. 3). Indeed, the record suggests that the

8

Petitioner was generally aware of Mr. Bowling's criminal record as early as his arrest in 1976, and most certainly from the times he filed his first and second petitions for post-conviction relief in 1987 and 1996, long before he requested Mr. Bowling's record in 2010.

First, at the time of his arrest in 1976, the Petitioner was aware that Mr. Bowling was on probation. *See Ratliff*, 2012 WL 1868312, at *12. In 1987, the Petitioner claimed that he and Mr. Bowling were arrested for burglary at the time the Petitioner was charged with murder and that the Sheriff agreed to drop Mr. Bowling's burglary and drunk driving charges if he testified against the Petitioner. (DE 12-25, pp. 35-36, 40). The Petitioner further acknowledged Mr. Bowling's criminal history in 1996 when he wrote:

> Counsel did not investigate . . . any aspect of this individual's background; a background that included a criminal record and obvious co-operation with the police in the allegations against petitioner.

(DE 12-24, p. 10).

The Petitioner may have been unfamiliar with the exact content of Mr. Bowling's criminal record, but he was aware that it existed and was able to obtain it with Mr. Bowling's consent. Accordingly, the Petitioner's ability to obtain the information using "due diligence" began in 1976.

### 5. § 2244(d)(2): Tolling the Statute of Limitations

The statute of limitations tolled while the Petitioner exhausted his remedies at the state level. However, the Petitioner's conviction became final in 1977, and he filed this petition for writ of habeas corpus in 2012. Even if the Petitioner had the entire one-year statute of limitations at his disposal in 1977, the 2012 filing is untimely.

Alternatively, even if the statute of limitations ran after the Petitioner obtained Mr. Bowling's criminal record in April 2010, the 2012 filing is still untimely. Though the Petitioner

9

pursued a petition for writ of error coram nobis after he obtained the new evidence on April 7, 2010, the court dismissed the petition and the Petitioner's successive appeals as time-barred. (DE 12-19, p. 86; DE 12-32, pp. 2, 12; DE 12-34, p. 3). These time-barred actions, therefore, were not "properly filed" so as to toll the statute of limitations under § 2244(d)(2). *See Williams v. Birkett*, 670 F.3d at 733. Consequently, the statute of limitations expired on April 7, 2011, making the Petitioners' 2012 filing untimely.[3]

The Petitioner's petition for writ of habeas corpus is time-barred unless (1) it is eligible for equitable tolling or (2) if the actual innocence exception applies.

## C. Equitable Tolling

Equitable tolling permits courts to review habeas petitions which otherwise would have been time-barred. *Holland v. Florida*, _ U.S. _, 130 S. Ct. 2549, 2560 (2010). However, equitable tolling is granted "sparingly," and the circumstances must have been "both beyond the control of the litigant and unavoidable with reasonable diligence." *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012). The petitioner bears the burden of proving:

> (1) That he has been pursuing his rights diligently, and
>
> (2) That some extraordinary circumstance stood in his way and prevented timely filing.

*Holland,* 130 S. Ct. at 2562 (internal citations omitted); *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011).

### 1. Diligent Pursuit of Rights

Egregiously long filing delays, such as holding relevant evidence for six years before filing or waiting three years to file based on an attorney's advice, are not the marks of a diligent

---

[3] Further, the Petitioner does not show that he was prevented from filing a protective petition in this Court while pursuing the writ of error coram nobis, which may have stayed the statute. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

petitioner. *McQuiggin v. Perkins*, 569 U.S. _, 133 S. Ct. 1924, 1931 (2013); *Keeling*, 673 F.3d at 463. Though courts require a showing of "reasonable" diligence, not "maximum feasible diligence," even a five-month filing delay may fail this standard. *Holland*, 130 S. Ct. at 2565; *Kendrick v. Rapelje*, 504 F. App'x 485, 487 (6th Cir. 2012) (holding that a five-month filing delay did not exhibit reasonable diligence); *see also Greene v. Lafler*, 457 F. App'x 485, 487 (6th Cir. 2012).

At issue is whether (1) the Petitioner's thirty-four year delay in obtaining the new evidence and (2) the Petitioner's ten-month filing delay after obtaining this evidence preclude equitable tolling.

Though the Petitioner was convicted and sentenced in 1976, the Petitioner first sought access to Mr. Bowling's criminal record in 2010, thirty-four years later. This lapse of activity greatly exceeds the six-year delay in *McQuiggin*, and the Petitioner indicates no additional record-seeking attempts to show that he diligently pursued his rights. *See* 133 S. Ct. at 1931. Again the undersigned notes that the Petitioner was aware of Mr. Bowling's probation status and burglary arrest in 1976. *See Ratliff*, 2012 WL 1868312, at *12. Despite this, the Petitioner did not challenge Mr. Bowling's characterization or testimony in his 1976 motion for a new trial or 1977 direct appeal. (DE 12-1, pp. 38-39; DE 12-14).

Further, the Petitioner obtained Mr. Bowling's criminal record on April 7, 2010 (DE 1, p. 8) but filed a petition for writ of error coram nobis ten months later on February 22, 2011. (DE 12-18, p. 4). Unlike the petitioner in *Holland*, the Petitioner does not claim that he sought to ensure that his attorney met deadlines, complained about his attorney neglecting his case, or attempted to file his own *pro se* petition. *See Holland*, 130 S. Ct. at 2564-65. Instead, the Petitioner pins his inactivity from May 2010 to October 2010 on his attorney being unlicensed

and his inactivity from October 2010 to February 2010 on his attorney researching the best way to proceed. (DE 16, p. 11; DE 1, p. 9 ¶ 32).

Post-conviction inmates have no constitutional right to counsel. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007). Indeed, many habeas petitioners are *pro se*. Even so, the Petitioner fails to state why his attorney did not file this petition between April 2010 and May 2010 or why his attorney's research was not concluded prior to February 2011. Furthermore, the Petitioner fails to state why he neither engaged another attorney nor filed this petition *pro se* while his attorney was unlicensed. Upon receiving potentially exculpatory evidence, petitioners are not expected to sit on their rights—a ten-month filing delay, compounded with a thirty-four year delay in obtaining the evidence, rebuts a presumption of diligence. Therefore, the Petitioner is ineligible for equitable tolling because the Petitioner failed to establish the requisite diligence.

   2. **Extraordinary Circumstances**

The Petitioner did not establish that an extraordinary circumstance prevented him from timely filing his petition. The Petitioner presented the following as extraordinary circumstances: (1) the facts underlying the alleged *Brady* violation and (2) his former attorney's incompetence. (DE 16, pp. 6, 8-10).

First, there was no *Brady* violation. Nevertheless, the Petitioner failed to show that the government's nondisclosure was an extraordinary circumstance, especially when the Petitioner was already aware of Mr. Bowling's probation and burglary arrest. It appears that Tennessee law was the biggest obstacle to accessing Mr. Bowling's record. *See* Tenn. Code Ann. § 37-1-153.[4] Even so, the Petitioner's attorney overcame this hurdle by requesting permission from Mr. Bowling and the court to access the record. Of course, this was many years after the Petitioner's trial, but the Petitioner has not shown any past attempts to obtain this information.

---

[4] Tenn. Code Ann. § 37-1-153 strictly limits access to juvenile records.

Second, the Petitioner's former attorney, while not the most diligent representative, was not so negligent as to present an impairment to the Petitioner's pursuit of exoneration. An attorney's "garden variety claim of excusable neglect" does not justify equitable tolling, but an attorney's serious professional misconduct, mental illness, or drug use may constitute extraordinary circumstances. *Robertson v. Simpson*, 624 F.3d 781, 784-85 (6th Cir. 2010).

In this matter, the Petitioner's former attorney is faulted for his lack of thoroughness. Had the attorney investigated the witness' testimony and background, he may have discovered Mr. Bowling's criminal history. This negligence, however, does not rise to the level of "serious professional misconduct" which is the equivalent of an attorney abandoning his client. *See Greene*, 457 F. App'x at 486 (finding that the attorney's failure to file his client's post-conviction action and petition for writ of habeas corpus constituted an extraordinary circumstance).

The Petitioner is not entitled to equitable tolling, and unless the Petitioner succeeds on a claim of actual innocence, his habeas petition is time-barred.

**D. Actual Innocence**

Courts may hear untimely first-time habeas petitions under the "miscarriage of justice" or "actual innocence" exception. *McQuiggin*, 133 S. Ct. at 1934. The petitioner must "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928. A habeas petitioner's untimely delay or lack of diligence in claiming actual innocence is not an "absolute barrier to relief, but [ ] a factor in determining whether actual innocence has been reliably shown." *Id.*

The Petitioner claims actual innocence and asserts that new impeachment evidence about Mr. Bowling's criminal history is materially exculpatory. (DE 1, pp. 2, 6). It is noted that the Petitioner does not supplement this argument in his response to the motion to dismiss or in his

13

motion for discovery. (DE 16; 17).[5] Despite these assertions and in light of the Petitioner's inability to raise a valid *Brady* claim, it is improbable that the same evidence may support a convincing claim of actual innocence. The actual innocence standard requires a greater degree of confidence than does the *Brady* violation analysis. Here, the Petitioner has the burden of proving that the jury vote *would* have changed, whereas the *Brady* analysis only requires a *reasonable probability* that the outcome would have changed. As the Petitioner did not even meet the *Brady* requirement, the Petitioner has not demonstrated an ongoing miscarriage of justice, and statutory tolling is unwarranted.

## V. RECOMMENDATION

For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Respondent's Motion to Dismiss (DE 12) be **GRANTED**, that the Petitioner's petition for writ of habeas corpus (DE 1) be **DENIED** and **DISMISSED**, and that the Petitioner's motion to allow discovery (DE 17) be **DENIED**.[6]

Should the Petitioner file a timely notice of appeal, such notice shall be docketed as both a notice of appeal and an application for a COA, 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Where the district court denies a ground for relief on the merits, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. When a district court denies habeas relief on procedural grounds without reaching

---

[5] The undersigned further notes that the Petitioner filed his response and motion for discovery two months before the Supreme Court decided *McQuiggin v. Perkins*, 569 U.S. _, 133 S. Ct. 1924 (2013). However, the Petitioner has not yet sought leave to amend his response or motion.

[6] Though the Magistrate Judge recommends that the Petitioner's petition and motion be denied, the Magistrate Judge notes that the Petitioner's counsel filed a thorough and well-reasoned brief. Unfortunately, the Magistrate Judge must conclude that the facts and the law are against him.

14

the underlying constitutional claim, a COA may issue only if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Because the Petitioner failed to make a substantial showing of the denial of a constitutional right and filed the petition after the statute of limitations expired, the Magistrate Judge **RECOMMENDS** the COA **NOT ISSUE**. *See* 28 U.S.C. § 2253(c)(2); *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 18th day of July, 2013,

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge